**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-3373

———————

SURENDER MALHAN, for himself and as parent of E.M.
and V.M.,
                                        Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF
STATE; ATTORNEY GENERAL NEW JERSEY; STATE OF
NEW JERSEY; ELIZABETH CONNOLLY, in her official
capacity as acting Commissioner of Office of Child Support
Services; NATASHA JOHNSON, in her official capacity as
Director Division of Family Development; JOHN DOES 1-
10; OFFICE OF CHILD SUPPORT SERVICES

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-08495)
District Judge: Honorable Claire C. Cecchi

———————

Argued on April 3, 2019

Before: CHAGARES and HARDIMAN, *Circuit Judges*, and
GOLDBERG,[*] *District Judge*.

(Filed September 18, 2019)

Paul A. Clark [Argued]
Suite 1N
10 Huron Avenue
Jersey City, NJ 07306
       *Attorney for Appellant*

Melissa H. Raksa
Ragner E. Jaeger [Argued]
Office of Attorney General of New Jersey
Department of Health & Human Services
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625
       *Attorneys for Appellees*

-----

OPINION OF THE COURT

-----

HARDIMAN, *Circuit Judge*.

    This case arises out of a family law dispute that began in 2011 and remains pending in Hudson County, New Jersey.

-----

   [*] Honorable Mitchell S. Goldberg, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Over the past eight years, the family court has required Appellant Surender Malhan to pay some $300,000 in child and spousal support to his putative ex-wife, Alina Myronova. The crux of Malhan's complaint is that New Jersey officials violated his federal rights when they failed to reduce his support obligations after he was awarded custody of their two children and Myronova obtained a job that pays more than his own. The District Court dismissed Malhan's second amended complaint, holding that it lacked jurisdiction under the *Rooker-Feldman* doctrine. And to the extent it had jurisdiction, the District Court declined to exercise it under *Younger v. Harris*, 401 U.S. 37 (1971). In our view, Malhan is entitled to federal court review of some of his claims. So we will affirm in part, reverse in part, and remand for further proceedings.

I

In February 2011, Myronova sued Malhan for divorce in Hudson County, New Jersey.[1] The family court awarded Myronova full custody of the couple's two minor children and ordered Malhan to pay $6,000 per month for child and spousal support. Malhan also had to give Myronova rental income from their jointly owned properties, which the court earmarked for mortgage payments.

---

[1] The family court case is *Myronova v. Malhan*, No. FM-07-001952-14. We view the facts in the light most favorable to Malhan because the District Court accepted his pleaded facts as true and treated the State's motion to dismiss as a facial attack on jurisdiction. *See Schuchardt v. President of the United States*, 839 F.3d 336, 343 (3d Cir. 2016); *Malhan v. Tillerson*, 2018 WL 2427121, at *1–2 (D.N.J. May 30, 2018).

After suffering these setbacks, Malhan received some favorable rulings from the family court. In 2012, he was awarded joint custody of the children, which increased their proportion of overnight stays with Malhan from zero to more than half. The year after, the court found Myronova owed Malhan about $44,000, half of which was rental income Myronova had embezzled for personal use rather than pay the mortgage. The other half was spousal support the court ordered her to return because she had been living with her boyfriend.

Soon after he obtained these favorable rulings, Malhan sought a reduction in his child support obligations. But the court decided to postpone any reduction until a final judgment of divorce, which still has not issued. And in the years since, the gap between what Malhan must pay and what he should pay has only widened. *See* N.J. Rule of Court 5:6A, Appendix IX-A, Considerations in the Use of Child Support Guidelines 2 (2018); App. 28–30. By 2016, Myronova's annual income had increased from zero to more than $100,000—well over Malhan's income of about $60,000.

Despite this reversal in their economic fortunes, Malhan still must pay Myronova $3,000 per month in child support— an amount the court refuses to recalculate even after acknowledging it is unusual "for a parent who is not the parent of primary residence" to receive child support. App. 56 ¶ 179. Relying on that comment, Malhan briefly stopped paying child support. Because the comment was not an order lifting his obligations, however, Malhan fell into arrears, and the court ordered his wages garnished.

Unable to find relief in family court, Malhan filed a six-count complaint in federal court. The three counts most

4

relevant to this appeal seek declaratory or injunctive relief against New Jersey officials for violating federal law:

- Count 2 challenges the disclosure of Malhan's bank records and the administrative levy of his bank account. It alleges violations of 42 U.S.C. § 669a, a provision of the Child Support Enforcement Amendments of 1984 (CSEA) to Title IV-D of the Social Security Act. *See* Pub. L. No. 98-378, 98 Stat. 1305; App. 42–49.

- Count 5 claims Defendants are violating Malhan's right to due process of law by refusing to permit counterclaims and offsets to his child and spousal support debt. *See* App. 54–55.

- Count 6 alleges that the garnishment of Malhan's wages violates the CSEA and § 303 of the Consumer Credit Protection Act, 15 U.S.C. § 1673. *See* App. 55–64. The family court's garnishment order was in place until March 2018. The court then vacated its order in response to the U.S. Department of Labor, which said the garnishment violated § 1673(c). *See* App. 75–76.[2]

---

[2] New Jersey claims "[t]he only challenged conduct on the part of the State Defendants is the OCSS [Office of Child Support Services] levy, which is moot." N.J. Br. 10 (citing App. 18–19). That is incorrect. Count 2 challenges the alleged disclosure of bank records (and the agency levy). *See* App. 42–49. Count 5 contests the debt from the child support and spousal support orders. *See* App. 54–55. Count 6 challenges the family court's (now vacated) garnishment order. *See* App. 55–63.

5

The District Court dismissed Counts 2, 5, and 6 on two independent grounds. First, the Court held it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine, which bars district court review of state court judgments. *See Malhan v. Tillerson*, 2018 WL 2427121, at \*6–8 (D.N.J. May 30, 2018). It reasoned "(1) the Family Court has made a determination as to Plaintiff's parenting situation, as well as Plaintiff's child support obligations; (2) Plaintiff is complaining of these findings; (3) the Family Court made its findings before Plaintiff filed this matter; and (4) Plaintiff is asking this Court to overturn the Family Court's findings." *Id.* at \*6 (applying *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)). Second, the Court invoked *Younger* abstention to decline jurisdiction. *See id.* at \*6–8. It did so because Malhan's suit implicated "important state interests" and the New Jersey family court offered an "adequate opportunity to raise federal claims." *Id.* at \*7. Malhan filed this timely appeal.[3]

---

And the State points to nothing in the record that suggests the levy is moot. Its only citation is to the District Court opinion, which noted that the family court had vacated its garnishment order. Malhan, for his part, certifies that OCSS levied his bank account as recently as February 2018. App. 72 ¶ 17. He attaches a scan of OCSS's own "Notice of Levy" as support. App. 73–74.

[3] Malhan did not appeal the dismissal of Counts 1 or 4. The District Court also dismissed Count 3, which alleged violations of three CSEA/Title IV-D provisions. Analyzing

II

A

We first address the District Court's holding that it lacked jurisdiction under *Rooker-Feldman*. That doctrine

only one of the provisions, the Court held that the CSEA does not provide a private right of action.

That methodology was error. "Only by manageably breaking down the complaint into specific allegations can the District Court proceed to determine whether any specific claim asserts an individual federal right." *Blessing v. Freestone*, 520 U.S. 329, 346 (1997) (examining child support under Title IV-D). The requisite degree of specificity is "whether the 'provision in question' was designed to benefit the plaintiff." *Id.* at 342 (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989)); *see also, e.g.*, *Cuvillier v. Taylor*, 503 F.3d 397, 404–05 (5th Cir. 2007) (analyzing 42 U.S.C. §§ 651, 652, and 654(4)(B), (13)). And normally, "this defect is best addressed by sending the case back for the District Court to construe the complaint in the first instance." *Blessing*, 520 U.S. at 346.

But instead of challenging the Court's holding, Malhan argues that the Declaratory Judgment Act entitles him to relief. *See* Malhan Br. 30–34 (discussing 28 U.S.C. § 2201). "[T]he Declaratory Judgment Act is procedural only," *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937), and "presupposes the existence of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). It creates a remedy, not rights. *See State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). We will affirm the dismissal of Count 3 for that reason.

conflicts with the familiar maxim that federal courts have a "virtually unflagging" duty to exercise jurisdiction conferred by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). At the same time, federal district courts are not amenable to appeals from disappointed state court litigants. A litigant seeking to appeal a state court judgment must seek review in the United States Supreme Court under 28 U.S.C. § 1257. *Id.* As the Court has explained:

> *Rooker* and *Feldman* exhibit the limited circumstances in which [the] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction *in an action it would otherwise be empowered to adjudicate* under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity).

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (emphasis added).

Although those "limited circumstances" arose only twice in the Supreme Court—in *Rooker* and *Feldman* themselves—lower courts applied the doctrine liberally for some time. *See, e.g.*, *id.* at 283; Thomas D. Rowe Jr. & Edward L. Baskauskas, *"Inextricably Intertwined" Explicable at Last?* Rooker-Feldman *Analysis after the Supreme Court's* Exxon Mobil *Decision*, 1 Fed. Cts. L. Rev. 367, 370–71 (2006). That changed in 2005 when the Court decided *Exxon*. There, the Court reversed our expansive interpretation of *Rooker-Feldman* and "confined" the doctrine "to cases of the kind from

8

which [it] acquired its name: [1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." 544 U.S. at 284; *accord, e.g.*, *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018).

Given these elements, the problem with the District Court's application of *Rooker-Feldman* is readily apparent: Malhan does not "complain[ ] of injuries caused by [a] state-court *judgment*." *Exxon*, 544 U.S. at 284 (emphasis added). In fact, as the District Court implied in its order denying reconsideration, there is no judgment at all because Malhan is complaining of "findings" and "determinations" of the family court. App. 4. But does *Rooker-Feldman* apply to the family court's interlocutory orders?

The answer is less than clear. Before *Exxon*, we thought *Rooker-Feldman* barred review of interlocutory state court orders that "resolved, at least for the moment, the dispute between the parties which forms the basis of the federal complaint." *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't*, 973 F.2d 169, 178 (3d Cir. 1992). Since *Exxon*, we have not addressed whether *Port Authority* remains good law. *See, e.g.*, *Argen v. Kessler*, 2018 WL 4676046, at *6–7 & n.10 (D.N.J. Sept. 28, 2018). And the decisions of our panels and district courts have been inconsistent. *Compare, e.g.*, *Shawe v. Pincus*, 265 F. Supp. 3d 480, 489 (D. Del. 2017) (citing *Port Authority* and collecting four non-precedential opinions applying *Rooker-Feldman* to interlocutory orders after *Exxon*), *and Mayeres v. BAC Home Loans*, 2011 WL 2945833, at *4 (Bankr. D.N.J. July 21, 2011) (citing *Port Authority* and stating "the suggestion that *Rooker-Feldman* does not apply to interlocutory orders is at odds with

Third Circuit precedent"), *and* Raphael Graybill, Comment, *The Rook That Would Be King*, 32 Yale J. on Reg. 591, 596–600 (2015), *with Argen*, 2018 WL 4676046, at \*7 (declining to apply the doctrine to interlocutory orders), *and RegScan, Inc. v. Brewer*, 2005 WL 874662, at \*3 (E.D. Pa. Apr. 13, 2005) (same).

*Exxon* itself offers conflicting guidance. On the one hand, "judgment" might include non-final orders like preliminary injunctions. That reading would follow the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). On the other hand, *Exxon* described *Rooker* and *Feldman* as cases in which "the losing party in state court filed suit in federal court *after the state proceedings ended*." 544 U.S. at 291 (emphasis added); *accord Skinner v. Switzer*, 562 U.S. 521, 531 (2011). That language suggests that *Rooker-Feldman* applies only to final state court judgments. And the Court's holding that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name," 544 U.S. at 284, invites disagreement about the scope of *Rooker* and *Feldman*.

Fortunately, six of our sister circuits have reconciled *Exxon*'s different readings by holding that interlocutory orders are "judgments" only when they are effectively final. The foundational case in this "practical finality" approach is the First Circuit's *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005). Five courts of appeals have cited *Federacion* with approval. *See Robins v. Ritchie*, 631 F.3d 919, 927 (8th Cir. 2011); *Nicholson v. Shafe*, 558 F.3d 1266, 1274–76, 1279 (11th Cir. 2009); *Guttman v. Khalsa*, 446 F.3d 1027, 1032 & n.2 (10th Cir. 2006); *Hoblock v. Albany Cty. Bd. of Elections*, 422

F.3d 77, 89 (2d Cir. 2005); *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005), *as amended on denial of reh'g*, 2005 WL 1692466 (9th Cir. July 21, 2005).

*Federacion* outlines three situations in which there is a *Rooker-Feldman* "judgment." The first is when "the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved." *Federacion*, 410 F.3d at 24. Then the judgment is a "[f]inal judgment[ ] or decree [ ] rendered by the highest court of a State in which a decision could be had" under § 1257. *Id.* (quoting 28 U.S.C. § 1257(a)). The Supreme Court has exclusive jurisdiction in those cases, and "the state proceedings [have] ended" under *Exxon*. 544 U.S. at 291; *see Federacion*, 410 F.3d at 24.

The second situation is when "the state action has reached a point where neither party seeks further action." *Federacion*, 410 F.3d at 24. An example is when a lower state court "issues a judgment and the losing party allows the time for appeal to expire." *Id.* Or "the lower state court does not issue a *judgment* but merely an interlocutory order (*e.g.*, a discovery order determining whether certain documents were privileged), and the parties then voluntarily terminate the litigation." *Id.* at n.10. In this situation, unlike the first, usually there is not "an appealable 'final judgment or decree rendered by the highest court of a State in which a decision could be had' under § 1257." *Id.* at 24 (alterations omitted) (quoting 28 U.S.C. § 1257(a)). But under these circumstances there is a *Rooker-Feldman* "judgment" because the state proceeding has "ended."

Lastly, there is a judgment when a state proceeding has "finally resolved all the federal questions in the litigation,"

11

even though "state law or purely factual questions (whether great or small) remain to be litigated." *Id.* at 25. The First Circuit based this scenario on the Supreme Court's second footnote in *Exxon*. That footnote states *Rooker-Feldman* would have applied to a hypothetical suit raised in *ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989).

The hypothetical claimed the *ASARCO* petitioners should have attacked the state court decision in "a new action in federal district court" rather than an appeal in the Supreme Court. *Exxon*, 544 U.S. at 287 n.2. The Court disagreed. It reasoned that it had exclusive appellate jurisdiction over the state court order under "exceptions to the finality requirement that were set out in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975)." *ASARCO*, 490 U.S. at 612, 622–23; 16B Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure: Jurisdiction § 4010 (3d ed. Apr. 2019 update) (discussing the exceptions at length). Because the Court had § 1257 jurisdiction, *Rooker-Feldman* would bar that district court suit.

The First Circuit thus concluded that when a state court order is "final" under *Cox*, it is also final under *Rooker-Feldman*. *See Federacion*, 410 F.3d at 26–27. So under the practical finality approach, there is a "judgment" if the challenged order is final under *Cox* or the state case has ended. We adopt this approach and hold that *Rooker-Feldman* does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court.

B

New Jersey cites several not precedential opinions in which we have applied *Rooker-Feldman* broadly even after

12

*Exxon*. *See* N.J. Br. 12 (citing *Tauro v. Baer*, 395 F. App'x 875, 876–77 (3d Cir. 2010) (per curiam), and *McKnight v. Baker*, 244 F. App'x 442, 444–45 (3d Cir. 2007)); *see also, e.g.*, *Mikhail v. Kahn*, 572 F. App'x 68, 70 n.2 (3d Cir. 2014) (per curiam) (interlocutory family court orders).

But those opinions contradict *Exxon*'s language and *Rooker-Feldman*'s rationale. *Exxon* demands that the doctrine occupy a "narrow ground" bounded by "ended" state proceedings like *Rooker*, *Feldman*, and *ASARCO*. 544 U.S. at 284–87 & n.2, 291. The mere "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 292 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). And that is because "the 'exclusive jurisdiction' notion underlying *Rooker* and *Feldman*" is distinct from doctrines like preclusion, "comity, abstention, and exhaustion." Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer & David L. Shapiro, Hart & Weschler's the Federal Courts and the Federal System 1410 (7th ed. 2015); *see Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam) (distinguishing preclusion); *Exxon*, 544 U.S. at 292 (distinguishing comity and abstention). That jurisdictional notion is, once again, that "*Rooker* and *Feldman* exhibit the limited circumstances in which [the] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate." *Exxon*, 544 U.S. at 291.

There is more evidence that our not precedential opinions took *Rooker-Feldman* too far. In two cases following *Exxon*, the Supreme Court again limited the doctrine. *See Skinner*, 562 U.S. at 532 (holding that while "a state-court decision is not reviewable by lower federal courts, [ ] a statute

13

or rule governing the decision may be challenged in a federal action"); *Lance*, 546 U.S. at 466 (holding that the doctrine "does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment"). And the Court has "warned" lower courts to stop extending the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases." *Lance*, 546 U.S. at 464 (quoting *Exxon*, 544 U.S. at 283); *see Skinner*, 562 U.S. at 532. For beyond those contours, the doctrine "overrid[es] Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and supersed[es] the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738 [the Full Faith and Credit Act]." *Lance*, 546 U.S. at 464 (quoting *Exxon*, 544 U.S. at 283).

At the same time, *Exxon* bars us from construing *Rooker-Feldman* too narrowly. *Exxon* stressed *Rooker-Feldman* may apply when "the losing party in state court file[s] suit in federal court after the state proceedings [have] *ended*." 544 U.S. at 291 (emphasis added); *accord Skinner*, 562 U.S. at 531. The Court could have—but has not—said that an "ended" proceeding is simply one in which the Court has § 1257 jurisdiction. By declining that simpler explanation, the Court has presumably meant to ensure that lower courts do not review any proceedings that have ended even when the Supreme Court itself lacks jurisdiction. *See, e.g.*, *Nicholson*, 558 F.3d at 1277 n.11. An example would be a case that misses its state's independent and adequate appeal deadline. *See Federacion*, 410 F.3d at 24.

Our holding thus ensures we do not review state court proceedings that have "ended," even when the Supreme Court lacks jurisdiction. That satisfies *Exxon*. And it limits the

14

interlocutory orders that count as "judgments" to those over which the Court has § 1257 jurisdiction. That respects *Rooker-Feldman*'s jurisdictional basis.

Applying these principles, we hold that none of the interlocutory orders in Malhan's state case are "judgments." For one, they are not "final judgments or decrees rendered by the [New Jersey Supreme Court]." 28 U.S.C. § 1257(a). Nor have they "finally resolved all the federal questions in the litigation" or else satisfied practical finality under *Cox*. *Federacion*, 410 F.3d at 25; *see Cox*, 420 U.S. at 477–85. Malhan has had several motions pending since 2016, discovery is incomplete, no trial is scheduled, and the family court has made clear (so far) that Malhan's support obligations will not change until a final divorce decree is entered. *See* App. 31; N.J. Br. 6–7. His state court proceedings are far from "ended." *Exxon*, 544 U.S. at 291; *see, e.g.*, *Federacion*, 410 F.3d at 24 & n.10. So *Rooker-Feldman* did not deprive the District Court of jurisdiction.

## III

### A

Having established that the District Court had jurisdiction over Malhan's federal claims, we consider whether the Court erred by abstaining from exercising that jurisdiction. To promote comity between the national and state governments, *Younger* requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77–78 (2013); *Younger*, 401 U.S. 37.

15

In deciding to abstain, the District Court considered three factors announced by the Supreme Court in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982): whether "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Malhan*, 2018 WL 2427121, at \*6 (quoting *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).

But much has transpired since *Middlesex* was decided almost forty years ago. In *Sprint*, the Supreme Court underscored that *Younger* abstention conflicts with federal courts' "virtually unflagging" obligation to exercise their jurisdiction. 571 U.S. at 77 (quoting *Colorado River*, 424 U.S. at 817). And just as *Exxon* and its progeny limited *Rooker-Feldman*'s scope, *Sprint* narrowed *Younger*'s domain. The Court explained—and we have stressed several times since—that the "three *Middlesex* conditions" are no longer the test for *Younger* abstention. *Sprint*, 571 U.S. at 81; *e.g.*, *Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017).

Instead, *Younger* applies to only "three exceptional categories" of proceedings: (1) "ongoing state criminal prosecutions"; (2) "certain 'civil enforcement proceedings'"; and (3) "pending 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint*, 571 U.S. at 78–79 (alteration omitted) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 368 (1989)). Only after a court finds that a proceeding fits one of those descriptions should it consider *Middlesex*'s "*additional*

16

factors."[4] *Id.* at 81–82. Otherwise, "[d]ivorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings." *Id.* at 81. So we must ask whether Counts 2, 5, and 6 challenge "exceptional" proceedings under *Sprint*.[5]

---

[4] We take this opportunity to note that *Sprint* abrogates *Anthony v. Council*, 316 F.3d 412 (3d Cir. 2003). That case involved a challenge to New Jersey family court contempt proceedings. *See id.* at 415–16. Plaintiffs, who had been jailed for civil contempt after failing to pay child support, sought declaratory and injunctive relief against future detention. *See id.* To decide whether declaratory and injunctive relief was appropriate, we applied only the *Middlesex* factors. *See id.* at 418–23. And we reasoned that "[i]n New Jersey, child support orders and the mechanisms for monitoring, enforcing and modifying them comprise a unique system in continual operation." *Id.* at 420. We viewed the system "as a whole, rather than as individual, discrete hearings." *Id.* at 420–21.

*Sprint*'s "exceptional categories" do not include "system[s] in continual operation." True, "the federal court's disposition of [ ] a case may well affect, or for practical purposes pre-empt, a future—or . . . even a pending—state-court action." *NOPSI*, 491 U.S. at 373. But "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint*, 571 U.S. at 72.

[5] Despite all this, New Jersey continues to press only the *Middlesex* conditions. *See* N.J. Br. 14–16. It does not even cite *Sprint* in its brief. This approach defies several controlling precedents identified in Malhan's opening brief and a district court reprimand for making the same mistake before. *See*

17

B

*Sprint*'s first two categories do not apply here. None of Malhan's counts involve criminal prosecution. Nor do any challenge a civil enforcement proceeding "'"akin to a criminal prosecution' in 'important respects.'" *Sprint*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)); *see Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 182 (3d Cir. 2014); *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014). Malhan's wife, not the State, began the family court case. The case has not sought to sanction Malhan for wrongdoing, enforce a parallel criminal statute, or impose a quasi-criminal investigation. Rather, it has sought only to distribute assets equitably in the interests of Malhan's children and putative ex-wife.

So we ask whether Counts 2, 5, or 6 "involv[e] certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (alteration omitted) (quoting *NOPSI*, 491 U.S. at 368). Orders of that type are very much "unique[ ]." *See id.* at 79 (citing only *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (bond pending appeal) and *Juidice v. Vail*, 430 U.S. 327, 336 & n.12 (1977) (civil contempt order)).

Count 2 involves the administrative collection of non-final money judgments. *See* App. 42–49. It does not challenge how a court protects the status quo pending appeal as in *Pennzoil*, where the bond money was collateral in lieu of immediate execution. Nor does it challenge a process, such as

*Edelglass v. New Jersey*, 2015 WL 225810, at \*11 n.3 (D.N.J. Jan. 16, 2015), *aff'd sub nom. Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017).

18

civil contempt, that is separate from the merits and that ends when the defendant complies. In fact, Count 2 does not challenge any judicial order at all. It challenges "executive action[s]" (bank levies) that have a layer of family court review—which means abstention is "plainly inappropriate under *NOPSI*." *ACRA Turf Club*, 748 F.3d at 141 n.12; *see NOPSI*, 491 U.S. at 368–70. In short, Count 2's agency actions further family court enforcement—but not uniquely so. They are only a tool for collecting non-final money judgments in disputes between private parties.

Count 5 perhaps attacks judicial orders, or at least the debt that has resulted from them. *See* App. 53–54. But those orders (or that debt) are not "uniquely in furtherance" of judicial functions. They are rather like the money judgments themselves in *Pennzoil* and *Juidice*. *See Pennzoil*, 481 U.S. at 6; *Juidice*, 430 U.S. at 329–30. They do not ensure that family courts can perform their functions—they are merely the output of those functions. *Cf., e.g.*, *Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701, 703–04, 705 n.2 (5th Cir. 2017) (declining to abstain from review of eminent domain proceedings).

As for Count 6, we need not decide whether family court garnishment orders are "unique[ ]." *Sprint*, 571 U.S. at 78 (quoting *NOPSI*, 491 U.S. at 368).[6] That Malhan's

---

[6] Although the State had ceased garnishing Malhan's wages at the time of the District Court's decision, Count 6 is not moot. The garnishment order lasted less than nine months (July 2017 to March 2018), *see* App. 56 ¶ 181–83, 72 ¶ 16— which is well below the two-year threshold for mootness set by the Supreme Court. *Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016); *accord United Steel*

garnishment proceeding is merely threatened—not "pending," *id.*—makes abstention "clearly erroneous." *Miller v. Mitchell*, 598 F.3d 139, 146 (3d Cir. 2010) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). State proceedings are pending only if they "are initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)); *accord* 17B Wright et al., *supra*, § 4253.

This rule limits *Younger* even in criminal cases. In *Wooley v. Maynard*, for example, New Hampshire had thrice prosecuted and convicted Maynard for obscuring the state's motto ("Live Free or Die") on his license plates. *See* 430 U.S. 705, 707–08 (1977). After his third conviction but before another prosecution, Maynard and his wife sought and received a federal injunction against future prosecutions for the same offense. *See id.* at 709. On Supreme Court review, the state argued *Younger* applied. *See id.* at 710–11. The Court disagreed. It reasoned that the Maynards faced "a genuine

---

*Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union v. Gov't of Virgin Islands*, 842 F.3d 201, 208 (3d Cir. 2016). Also, Malhan alleges that the family court has repeatedly refused to recalculate his child support obligations. *See* App. 71 ¶ 13. That debt creates "a reasonable expectation" of future garnishment, *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 440 (2011)), even if Malhan has not "demonstrated [its] probability," *Honig v. Doe*, 484 U.S. 305, 320 n.6 (1988). So the District Court had jurisdiction over Count 6 under 28 U.S.C. § 1331. And we have jurisdiction under 28 U.S.C. § 1291.

threat of prosecution," and that their suit was "in no way 'designed to annul the results of a state trial.'" *Id.* at 710–11 (quoting *Huffman*, 420 U.S. at 609). "[T]he relief sought [was] wholly prospective." *Id.* at 711; *see also Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (allowing declaratory relief because "[w]hen no state proceeding is pending . . . considerations of equity, comity, and federalism have little vitality").

In civil cases, the "pending" requirement naturally has at least equal force. Bearing this out are the Court's only two examples of "pending 'civil proceedings involving certain [unique] orders.'" *Sprint*, 571 U.S. at 78 (quoting *NOPSI*, 491 U.S. at 368). In *Juidice v. Vail*, the Court required abstention. 430 U.S. at 338. But it did so only because the state courts had issued contempt orders "at the time [the federal] lawsuit was commenced." *Id.* at 331–32. So "unlike . . . the plaintiff in *Steffel v. Thompson*," the *Juidice* plaintiffs faced "a pending, and not merely a threatened, proceeding." *Id.* at 333.

Similarly, in *Pennzoil v. Texaco*, a Texas jury returned a multi-billion-dollar verdict against Texaco. *See* 481 U.S. at 4. Just hours before the state court entered judgment, Texaco sued in federal district court, claiming for the first time that the state proceedings had violated federal law. *See id.* at 6 & n.5. Texaco asked the court to enjoin both the judgment itself and the state's requirement that the firm post a cash bond before appeal. *See id.* at 6–7. But at that point, the district court faced a state jury verdict and the impending entry of a state court judgment. So whether the judgment or verdict "initiated" the state bond proceedings, the court had little or no time to precede them with its own "proceedings of substance on the merits." *Hawaii Hous. Auth.*, 467 U.S. at 238. Indeed, seven days passed before the court issued even a temporary restraining order. *Compare Pennzoil*, 481 U.S. at 6 & n.5 (state judgment entered

December 10, 1985), *with Texaco, Inc. v. Pennzoil Co.*, 626 F. Supp. 250, 251 (S.D.N.Y. 1986) (temporary restraining order issued December 17, 1985), *and Hawaii Hous. Auth.*, 467 U.S. at 238 (declining to decide whether a temporary restraining order is "a substantial federal court action"). Unsurprisingly, then, the Supreme Court stressed that the state proceedings had been "pending." *Pennzoil*, 481 U.S. at 17; *accord id.* at 11, 14. And it mandated abstention.

Malhan's proceedings are nothing like those in *Juidice* or *Pennzoil*. The family court vacated its garnishment order last year and has not issued another. *See* App. 72. No factfinder has returned a verdict. No judgment waits to be entered. So Malhan faces only threatened garnishment. And like the plaintiffs in *Wooley* and *Steffel*, he can seek "wholly prospective" relief. *Wooley*, 430 U.S. at 711. That relief, as pled in Count 6, is that the District Court:

a. Declare under the Declaratory Judgment Act that garnishment of a custodial parent[']s wages is prohibited under CSEA [the Child Support Enforcement Amendments of 1984];

b. [ ] Preliminarily and permanently enjoin State Defendants from garnishing Malhan's salary so long as he is a custodial parent; [and]

c. In the alternative, grant declaratory and injunctive relief to Malhan that State Defendants may not garnish payments which are not "earnings" nor garnish payments above what is permitted by the Consumer

22

> Credit Protection Act and 45 CFR Section
> 303.100(e).

App. 63–64. On those terms, Malhan is not trying to "annul the results" of a past garnishment. *Wooley*, 430 U.S. at 711 (quoting *Huffman*, 420 U.S. at 609). So he may present Count 6 in District Court.[7]

*     *     *

The District Court had federal question jurisdiction and should have fulfilled its "virtually unflagging" obligation to exercise that jurisdiction. We will reverse its application of *Rooker-Feldman* and *Younger* to Counts 2, 5, and 6 and

---

[7] New Jersey also argues in passing that we should abstain from review under *Colorado River*, 424 U.S. 800. *See* N.J. Br. 16–17. *Colorado River* abstention allows a court, in certain "exceptional circumstances," to abstain from hearing a case to avoid piecemeal litigation. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

*Colorado River* applies only when the parties and claims in the state suit are "'identical,' or at least 'effectively the same'" as those in the federal suit. *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017) (quoting *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223–24 (3d Cir. 1994), *superseded by statute on other grounds as recognized in Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011)). Here, we have different parties (New Jersey, not Malhan's wife) and different claims (violations of federal law, not child support obligations).

remand for proceedings on the merits. We will affirm the Court's dismissal of Counts 1, 3 and 4.