NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1120
_____

SUSAN SILVER, MD; RICHARD DUCOTE, ESQ.;
*VICTORIA MCINTYRE, ESQ.,
                                        Appellants
                    v.

COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, and THE HONORABLE
KIM BERKELEY CLARK, in her official capacity

*Pursuant to Fed. R. App. P. 12(a).
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-18-cv-00494)
District Judge:  Honorable Nora Barry Fischer
_____

Submitted under Third Circuit LAR 34.1(a)
November 1, 2019

Before:  HARDIMAN, PHIPPS, and NYGAARD, *Circuit Judges*.

(Filed: February 6, 2020)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

This appeal concerns an exceptionally contentious child custody case. Two ex-spouses, Sammy Bertenthal and Susan Silver, disputed custody of their child in the Court of Common Pleas for Allegheny County. After a 23-day trial, that court granted sole legal and physical custody to the father, Bertenthal.

The child's mother, Silver, was not pleased with that result. Along with her attorney, Richard Ducote, she launched a press release and held a press conference that went beyond simply announcing disagreement with the outcome of the trial. Silver and Ducote used those opportunities to repeat highly charged allegations made at trial that Bertenthal had sexually abused the child. The coverage of those allegations appeared on popular websites and later was the subject of an article in a local weekly newspaper.

Bertenthal responded by moving for sanctions and a gag order against Silver and Ducote in the Court of Common Pleas. Silver attempted to remove that dispute to federal court, but the District Court rejected that effort.

Undeterred, Silver and Ducote initiated a separate lawsuit in the District Court against the Common Pleas Court. There, they sought immediate injunctive relief to prevent the Common Pleas Court from enjoining future speech or issuing sanctions. The District Court denied those requests for emergency injunctive relief.

The Common Pleas Court then issued an initial order governing the post-judgment conduct of the parties and counsel. Through that order, the Court of Common Pleas prevented both parties and their counsel from publicly discussing the child custody case.

2

That order prompted more litigation – in federal court. Silver and Ducote filed a motion to amend their complaint and moved again for a preliminary injunction. Both requests were denied.

Back at the state level, the Common Pleas Court entered a more targeted order after holding a hearing and making findings of fact. That order prohibited Silver, Ducote, and Silver's other counsel, Victoria McIntyre, from speaking publicly or communicating online about the case or encouraging others to do so. It also required them to remove information they posted about the case from the internet. The order further imposed an additional restriction on those three: if they were to testify before any legislative body, they could not provide information that would tend to identify the child. Silver, Ducote, and McIntyre appealed that ruling to the Pennsylvania Superior Court.

While that appeal was pending, Silver and Ducote returned to federal court seeking a new amendment to their complaint and a preliminary injunction. But finding that amending the complaint would be futile, the District Court denied not only amendment but also all requested relief. In reaching that result, the District Court relied on the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and *Younger* abstention. Ultimately, the District Court *sua sponte* dismissed the complaint with prejudice.

Meanwhile, Silver, Ducote, and McIntyre pressed forward with their state-court litigation. The Superior Court rejected their constitutional challenges to the Common Pleas Court's order. *See S.B. v. S.S.*, 201 A.3d 774, 783-84 (Pa. Super. Dec. 24, 2018). But then the Supreme Court of Pennsylvania granted review of a single issue – the same

3

federal question they attempted to litigate in the District Court: whether the Common Pleas Court order violated their rights under the First and Fourteenth Amendments. *See S.B. v. S.S.*, No. 89 WAL 2019, 2019 WL 4291606 (Pa. Sept. 11, 2019).

Even with that grant of review, Silver and Ducote did not abandon their efforts to litigate the same issue in federal court. They appealed the District Court's final judgment to this Court. *See* 28 U.S.C. § 1291.

The three issues on appeal here – the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and *Younger* abstention – all constitute threshold barriers to federal court review of a controversy. As threshold issues, those arguments need not be addressed in any particular sequence. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'") (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). And of the three threshold issues presented here, the most natural starting point is *Younger* abstention. *See id.* at 431 (explaining that a federal court need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*").

*Younger* abstention operates as an exception to a federal court's "virtually unflagging" obligation to hear and decide cases over which it has jurisdiction. *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also id.* at 72 (explaining that "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter"). But before *Younger* abstention "counsels

4

against federal relief," the federal action must constitute an exceptional circumstance that would present "the prospect of undue interference with state proceedings." *Id.* at 72. One such exceptional circumstance occurs when there are pending "civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial functions." *Id.* at 73 (quoting *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989)).

This case presents such an exceptional circumstance. Unlike this Circuit's decision in *Malhan v. Sec'y of U.S. Dep't of State*, 938 F.3d 453 (3d Cir. 2019), the federal action here challenges an order uniquely in furtherance of a state court's ability to perform judicial functions. The state-court order attacked by Silver and Ducote governs the post-judgment conduct of attorneys and litigants. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432-33 (1982) (abstaining under *Younger* from deciding a state-court action implicating "the important state obligation to regulate persons who are authorized to practice law"). And that order seeks to preserve the state court's power to further one of its uniquely judicial functions – promoting and protecting the best interests of a child whose custody had been previously adjudicated by the court. *See generally Kassam v. Kassam*, 811 A.2d 1023, 1025 (Pa. Super. 2002) (explaining that Pennsylvania courts have a "duty of paramount importance to protect [a] child's best interest and welfare" (quoting *G.B. v. M.M.B.*, 670 A.2d 714, 715 (Pa. Super. Jan. 25, 1996))).

Even in an exceptional circumstance, three more showings – commonly referred to as the *Middlesex* factors – are required for *Younger* abstention. *See generally Middlesex*

*Cty.*, 457 U.S. at 432. First, there must be ongoing state proceedings that are judicial in nature. *See Malhan*, 938 F.3d at 462. That is satisfied because Silver, Ducote, and McIntyre are parties to ongoing state court proceedings – their appeal before the Pennsylvania Supreme Court. Second, the state proceedings must implicate important state interests. *See id*. That requirement is also met because "[f]amily relations are a traditional area of state concern," *Moore v. Sims*, 442 U.S. 415, 435 (1979), and Pennsylvania has a "duty of paramount importance" to protect the best interest of children in custody proceedings. *Kassam*, 811 A.2d at 1025. Third, the state proceedings must afford an adequate opportunity to raise federal claims. *See Malhan*, 938 F.3d at 462. The state proceedings here do just that. This is not a situation in which a state court is "incapable of fairly and fully adjudicating the federal issues before it" sufficient to create "an extraordinarily pressing need for immediate federal equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975). Rather, the Supreme Court of Pennsylvania granted a discretionary appeal to address the very constitutional issues Silver and Ducote attempt to adjudicate in federal court.

For these reasons, on plenary review, *see Lui v. Comm'n. on Adult Entm't Establishments*, 369 F.3d 319, 325 (3d Cir. 2004), the District Court did not err in its legal analysis of the applicability of *Younger* abstention. Consequently, we will affirm the judgment of the District Court dismissing this case with prejudice on *Younger* grounds during the pendency of the state-court litigation.