**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2901
_____

DAVID L. MURRAY,
Appellant

v.

MICHAEL OSTROWSKI, Family Court Judge; DAVID RYAN NUSSEY, Attorney;
ASHLEY BATTAGLIA, Salem County DCP&P Case Worker;
ALLISON E. ACCURSO, Appellate Judge; CATHERINE I. ENRIGHT, Appellate
Judge; KAYLA OSCAR, Salem County DCP&P Case Worker;
CRAIG JESPERSEN, Salem County DCP&P Case Worker; LAUREN K. BUNN, Salem
County DCP&P Supervisor; MICHELLE DOAMAN, Salem County DCP&P Supervisor;
KEITH DELOATCH, Salem County DCP&P Supervisor; EDWARD RYER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1:22-cv-00812)
District Judge: Honorable Noel L. Hillman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 24, 2024
Before: RESTREPO, MATEY, and CHUNG, Circuit Judges

(Opinion filed: January 2, 2025)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant David Murray seeks review of several orders of the District Court entered in his civil rights action under 42 U.S.C. § 1983. We will affirm.

I.

At the root of this matter is Murray's child custody case, presided over by Judge Michael Ostrowski, Jr., in the Superior Court – Chancery Division in Salem County, New Jersey. At one point in that case, the parties were directed to appear for a pretrial conference, during which the court would, inter alia, set a date for the plenary hearing and determine whether Murray's son would be interviewed. The pretrial conference was adjourned and, in the weeks that followed, Murray fired his attorney and hired a new one.

Murray's new attorney failed to show for the next court date. Judge Ostrowski communicated to those present that the case was trial ready, and carried over the proceedings until the end of the week. When the parties and counsel all convened at that time, Murray's new attorney expressed surprise: He had thought there were still pretrial issues to resolve, but the court was ready to (and did) begin the plenary hearing. That day, Judge Ostrowski issued an emergency order indefinitely suspending Murray's parenting and visitation time. According to Judge Ostrowski, Murray appeared unwilling or unable to follow court orders or comport himself as a cooperative parent.

Two months later, Judge Ostrowski issued a final custody order through which Murray was given joint legal custody of his son, but was not designated the parent of primary residence or the parent in charge of day-to-day medical decisions. In addition, Murray's parenting time was limited to twenty-four hours every other weekend.

Murray challenged Judge Ostrowski's rulings, without success, in New Jersey's appellate courts. He then filed suit in federal court against a number of people connected in some way to the custody case: Judge Ostrowski; opposing counsel (Nussey); social workers (Battaglia, Oscar, Jespersen) with the New Jersey Division of Child Protection and Permanency (DCP&P) and their supervisors (Dunn, Doaman, Deloatch); a law enforcement officer (Ryer); and two appellate judges (Judges Accurso and Enright). Murray's thrice-amended pro se complaint raised federal due process and other claims.

The defendants all filed dispositive motions, which the District Court granted in a series of orders. First, the District Court entered an order granting the Rule 12(b)(6) motion filed by Judges Ostrowski, Accurso, and Enright (collectively, the Judicial Defendants). The District Court determined that the Judicial Defendants were entitled to absolute immunity because the allegedly wrongful conduct was all comprised of judicial actions taken within the scope of the judges' respective jurisdictions. Based on that immunity ruling, the District Court declined to exercise supplemental jurisdiction over Murray's state law claims against the Judicial Defendants.

That same day, the District Court entered a separate order granting the Rule 12(b)(6) motion filed by the DCP&P Defendants (the social workers and their supervisors). The District Court determined that these defendants were shielded by Eleventh Amendment immunity because they were being sued for actions they allegedly took while performing their duties as state employees, i.e., they were being sued as if they were the state itself.

Later that month, the District Court entered an order granting the Rule 12(b)(6) motion filed by Nussey. The District Court determined that Murray's claims against Nussey were subject to dismissal under the Rooker-Feldman doctrine[1] or, alternatively, because they were implausible or barred by preclusion principles.

Thereafter, the District Court entered an order granting the dispositive motion filed by Ryer. The District Court determined that Ryer, insofar as he was being sued for conduct that allegedly occurred while performing his duties with the New Jersey State Troopers, was entitled to Eleventh Amendment immunity.

The District Court also entered an order addressing a motion to seal filed by Murray. The District Court granted the motion to the extent it sought a permanent seal of certain materials from the custody proceedings, but otherwise denied the motion as procedurally defective. Finally, the District Court entered an order denying Murray's motion for reconsideration of two earlier decisions, and directing the Clerk of Court to mark the case closed.

II.

Murray has filed a notice of appeal, an amended notice of appeal, and a document that was construed by our Clerk as a second amended notice of appeal. Only the second amended notice of appeal accomplishes Murray's aim of securing appellate review of all

---

[1] See *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

the orders of the District Court described above.[2] We have jurisdiction to review those orders under 28 U.S.C. § 1291.

We review de novo orders granting Rule 12(b)(6) motions. See U.S. ex rel. Bookwalter v. UPMC, 946 F.3d 162, 168 (3d Cir. 2019). A district court's ruling declining to exercise supplemental jurisdiction is reviewed for abuse of discretion, see Hedges v. Musco, 204 F.3d 109, 123-24 (3d Cir. 2000), and the same goes for rulings on motions to seal, see In re Cendant Corp., 260 F.3d 183, 197 (3d Cir. 2001).

III.

We have carefully considered and liberally construed the arguments made in Murray's opening brief. Many of those arguments misunderstand the permissible scope of appellate issues—the scope is shaped by the orders under review—and the governing law. That latter point has particular significance in relation to Murray's frequently errant reliance on, for example, Federal Rule of Civil Procedure 60(b) as a vehicle for appellate relief, criminal statutes, and criminal law concepts.

Insofar as Murray improperly views the lower federal courts as the natural next phase of appellate review of rulings in his state custody case, some of his arguments only

---

[2] Murray's original notice of appeal was filed after two of the relevant orders were entered, but before entry of the four others. That notice was premature and, after final judgment was entered, at best had the capacity to secure appellate jurisdiction over the earlier-entered orders only. See Cape May Greene, Inc. v. Warren, 698 F.2d 179, 185 (3d Cir. 1983) (holding that a premature notice of appeal can ripen upon the district court's entry of final judgment); see also Marshall v. Comm'r Pa. Dep't of Corr., 840 F.3d 92, 96 (3d Cir. 2016) (per curiam) (explaining that the Cape May Greene doctrine does not permit review of "rulings made after the filing of the notice of appeal").

5

serve to buttress the District Court's application of the <u>Rooker</u>-<u>Feldman</u> doctrine, "which bars district court review of state court judgments." <u>Malhan v. Sec'y U.S. Dep't of State</u>, 938 F.3d 453, 457 (3d Cir. 2019). Other of Murray's arguments, like the one accusing the District Court of bias, are simply unfounded. <u>See Securacomm Consulting, Inc. v. Securacom Inc.</u>, 224 F.3d 273, 278 (3d Cir. 2000) ("We have repeatedly stated that a party's displeasure with legal rulings does not form an adequate basis for recusal."); <u>see also</u> <u>Liteky v. United States</u>, 510 U.S. 540, 551 (1994).

Ultimately, none of Murray's arguments persuades us that the District Court committed reversible error in this action. The District Court's immunity rulings, in particular, are supported by ample case law and are otherwise sound. <u>See, e.g.</u>, <u>P. R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court' under the Eleventh Amendment") (citation omitted); <u>Mireles v. Waco</u>, 502 U.S. 9, 12–13 (1991) (per curiam) ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'") (citation omitted); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 69 (1989) (explaining that the State is not a "person" under § 1983); <u>Hamilton v. Leavy</u>, 322 F.3d 776, 782–83 (3d Cir. 2003) ("[A]ction taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages[.]"). We reject as without any merit Murray's argument that he has proven the defendant-appellees to be participants in a mass fraud that strips them of immunity from suit in federal court or liability under § 1983.

Accordingly, the judgment of the District Court will be affirmed.