**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1575
_____

CHERYL BOROWSKI, Esq.,
Appellant

v.

KEAN UNIVERSITY; DAWOOD FARAHI; CHARLES
WILLIAMS; STEVEN KUBOW; KENNETH GREEN, Esq.;
FARAQUE CHOWDHURY; CHRISTOPHER MYERS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-20-cv-05172)
District Judge:  Honorable William J. Martini
_____

Argued:  March 22, 2022

Before:  BIBAS, MATEY, and PHIPPS, *Circuit Judges*.

(Filed: May 25, 2023)
_____

Kevin Haverty     [ARGUED]
WILLIAMS CEDAR
8 Kings Highway West
Suite B
Haddonfield, NJ 08033

   *Counsel for Cheryl Borowski*


Rimma Razhba     [ARGUED]
OFFICE OF ATTORNEY GENERAL OF NEW JERSEY
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625

    *Counsel for Kean University, Dawood Farahi,*
    *Charles Williams, Steven Kubow, Kenneth*
    *Green, Faraque Chowdhury, and Christopher*
    *Myers*


Pamela N. Ullman
OFFICE OF ATTORNEY GENERAL OF NEW JERSEY
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625

    *Counsel for Christopher Myers*

_____

OPINION OF THE COURT
_____

PHIPPS, *Circuit Judge*.

After a public university in New Jersey terminated an adjunct professor's employment, she filed an administrative appeal with the New Jersey Civil Service Commission. The Commission dismissed that challenge on jurisdictional grounds. Instead of appealing that ruling in the state-court system as she could have, the former adjunct professor commenced this suit in federal court for violations of her federal and state civil rights. The District Court relied on *Younger* abstention to dismiss the adjunct professor's federal case with prejudice. But *Younger* abstention prevents federal-court interference with only certain types of state proceedings, such as quasi-criminal civil enforcement actions, and an appeal to the New Jersey Civil Service Commission is neither quasi-criminal nor within another category of *Younger*-eligible proceedings. Another prerequisite for *Younger* abstention is that the state proceeding must be ongoing, and when the adjunct professor filed this case, the Commission's dismissal of the proceeding was already final, the time to appeal having expired. Thus, on *de novo* review, two independent reasons prevent the dismissal of the adjunct professor's complaint on *Younger* grounds: an appeal to the Commission is not a quasi-criminal civil enforcement proceeding, and when this suit was filed, the adjunct professor's appeal to the Commission was not ongoing. Accordingly, we will vacate the District Court's order of dismissal and remand this case for further proceedings.

# I. Factual Allegations & Procedural History

## A. Kean University's Procedures for Resolving Discrimination Complaints

Kean University, part of New Jersey's state system of higher education, has procedures in place to implement New Jersey's Policy Prohibiting Discrimination in the Workplace. Under those procedures, once Kean receives a complaint of discrimination or harassment, its Affirmative Action Office must use its discretion to conduct "a prompt, thorough, and impartial investigation into the alleged harassment or discrimination." New Jersey State Model Procedures for Internal Complaints Alleging Discrimination in the Workplace ¶ 9 (JA54). The Affirmative Action Office may also impose interim corrective measures, and after the investigation is complete, that office prepares a report, but it does not have the authority to resolve the complaint. Rather, Kean's Chief of Staff, as the President's authorized designee, reviews the report of the investigation and makes a final determination on the allegations of discrimination or harassment. If the Chief of Staff finds that the complaint is substantiated, then he or she must identify "appropriate corrective measures necessary to immediately remedy the violation." *Id.* ¶ 11 (JA54–55). A final determination by the Chief of Staff may be appealed to the New Jersey Civil Service Commission by the party against whom the complaint was filed, and that party bears the burden of proof before the Commission.

## B. Kean's Investigation and Final Determination of the Complaint Against Borowski

These procedures came into operation in March 2016 with respect to an adjunct professor, Cheryl Borowski, who had taught at Kean for about five years. According to students in her undergraduate business law course, Borowski had made insensitive in-class statements about gender, immigration status, ethnicity, and religion. On March 15, an Assistant Dean at Kean requested to meet with Borowski after her class the

4

next week. Borowski declined because she had a previously scheduled engagement, but she responded that a union representative would attend on her behalf. The union representative, however, arrived late to the meeting due to an extended doctor's appointment, and by then the Assistant Dean had reported Borowski to the Human Resources Office.

A week later, the Acting Associate Vice President of Kean approached Borowski after her business law class and informed her that she would no longer be teaching the course. In a confirming email later that day, the official notified Borowski that she would be fully compensated as if she had completed teaching the entire course.

Borowski made several inquiries about the basis for her termination, and she incrementally received more information over the next few months. In a letter dated May 2, 2016, the Director of Human Resources explained that Borowski had been "named as a respondent in a complaint alleging a violation of the New Jersey State Policy Prohibiting Discrimination in the Workplace." Compl. ¶ 22 (JA23). While investigating that complaint, Kean informed Borowski, through her attorney, of the student grievances against her, and Borowski denied those. In August, before the Chief of Staff had made a final determination on the complaint, Kean communicated to Borowski that she would not have a teaching position for the fall semester. Borowski continued to defend herself by supplying additional documentation and arguing that the students misunderstood her pedagogical methods.

On October 6, 2016, the Chief of Staff made a final determination: Borowski had violated the Policy Prohibiting Discrimination through her in-class comments. In the closing paragraph of that written letter, the Chief of Staff informed Borowski that if she wished to challenge the final determination, she could submit a written appeal to the New Jersey Civil Service Commission.

### C. Borowski's Appeal to the New Jersey Civil Service Commission

Consistent with the notice provided by the Chief of Staff in the final-determination letter, Borowski did administratively appeal to the Commission. In reviewing the appeal, the Commission recognized that material facts were in dispute, and on that basis, it referred the matter to a state administrative law judge for a hearing to evaluate evidence and assess the credibility of the witnesses. That hearing occurred over three days in June 2018, and the parties were permitted to file post-hearing briefs.

In October 2018, before a decision on the hearing, Kean alerted the administrative law judge of an intervening decision by the Commission. In that ruling, which involved a former adjunct professor at Kean, the Commission determined that adjunct professors were not civil service employees entitled to appeal final determinations of violations of the Policy Prohibiting Discrimination. The administrative law judge applied that ruling to Borowski and dismissed her appeal in October 2018.

The next month, the Commission accepted and affirmed the administrative law judge's determination that it lacked jurisdiction to adjudicate Borowski's claim.[1] By its terms, the

---

[1] In its decision, the Commission treated all appeals by adjunct professors identically and did not distinguish between appeals of final determinations for complaints brought *by* adjunct professors and appeals of final determinations for complaints brought *against* adjunct professors, despite textual differences in the underlying policy provisions. *Compare* New Jersey State Model Procedures for Internal Complaints Alleging Discrimination in the Workplace ¶ 13 (JA55–56) (limiting appeals by complainants to applicants for employment, or employees "in the career, unclassified, or senior executive service"), *with id.* ¶ 14 (JA56) (imposing no such appellate

6

Commission's order dismissing the administrative appeal was "the final administrative determination in th[e] matter" and stated that "[a]ny further review should be pursued in a judicial forum." Final Admin. Action, Compl. Ex. 7, at 3 (JA81). By New Jersey Court Rule, Borowski had 45 days to appeal that ruling to the Appellate Division of the New Jersey Superior Court. *See* N.J. Ct. R. 2:4–1(b); *see also id.* 2:2–3(a)(2) (providing for appeal as of right of final decisions by state administrative agencies).

### D. Borowski Sues in Federal Court

Instead of appealing the Commission's dismissal to state court within the time allotted, Borowski commenced this action in District Court nearly a year and a half later. She sued Kean, several Kean administrators in their official and individual capacities, and the Director of the New Jersey Civil Service Commission. Her complaint contained eight counts: five brought under 42 U.S.C. § 1983 for alleged violations of her federal constitutional rights and three brought under New Jersey law. Borowski requested several forms of relief, including compensatory and punitive damages, as well as declaratory and injunctive relief.

Through two separate motions – one by the defendants associated with Kean and one by the Director of the Commission – the defendants sought to dismiss the complaint. They argued that Borowski's complaint should be dismissed in whole or in part for several reasons: Eleventh Amendment immunity, qualified immunity, *Younger* abstention, failure to state a claim upon which relief can be granted, and lack of supplemental jurisdiction.

In granting those motions and dismissing the complaint with prejudice, the District Court considered only *Younger*

---

limitation for final determinations made against persons "against whom the complaint was filed").

abstention and dismissed the entire complaint on that basis. Borowski timely appealed that order and by so doing invoked this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a).

## II. DISCUSSION

As a general rule, "a federal court's obligation to hear and decide a case" within its jurisdiction "is virtually unflagging," and a court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotation marks omitted). But in *Younger v. Harris*, the Supreme Court held that, absent extraordinary circumstances, a federal court cannot enjoin an ongoing state-court criminal proceeding. 401 U.S. 37, 41, 45 (1971); *see also Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974). That holding rested on principles of equity, comity, and federalism. *See Younger*, 401 U.S. at 44 (justifying abstention out of a "sensitivity to the legitimate interests of both State and National Governments"); *see also New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 364 (1989) ('*NOPSI*') (explaining that *Younger* abstention "was based partly on traditional principles of equity, but rested primarily on the even more vital consideration of comity" (quotation marks and internal citation omitted)); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606 (1975) ("*Younger* turned on considerations of comity and federalism peculiar to the fact that state proceedings were pending . . . ."); *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (explaining that *Younger* abstention serves a dual purpose: (i) it promotes comity by restricting federal court interference with ongoing state judicial proceedings, and (ii) it restrains equity jurisdiction "when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm"). Over time, the Supreme Court has reasoned that those same principles justify abstention to prevent undue federal-court interference with two other types of state-level proceedings: quasi-criminal civil enforcement

8

actions and civil lawsuits with orders that are uniquely in furtherance of a state court's ability to perform its judicial functions. *See Sprint*, 571 U.S. at 78; *NOPSI*, 491 U.S. at 367–68; *see also, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 335–36 (1977) (extending *Younger* to contempt process); *Huffman*, 420 U.S. at 604 (extending *Younger* to criminal-like civil enforcement proceeding). As *Younger* abstention operates an exception to the general rule that federal courts must decide cases within their limited jurisdiction, it applies only in those three circumstances identified by the Supreme Court. *See Sprint*, 571 U.S. at 79.

In addition, for a quasi-criminal civil enforcement proceeding to warrant abstention under *Younger*, it must satisfy three supplemental conditions. Those requirements – referred to as the *Middlesex* conditions – are that the state proceeding (i) be ongoing and judicial in nature; (ii) implicate important state interests; and (iii) afford an adequate opportunity to raise federal claims. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *see also Sprint*, 571 U.S. at 81 (characterizing *Middlesex* conditions as only "*additional* factors" not to be "[d]ivorced from their quasi-criminal context"); *Altice USA, Inc. v. N.J. Bd. of Pub. Utils.*, 26 F.4th 571, 576, 578 (3d Cir. 2022); *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019).

When a quasi-criminal civil enforcement proceeding satisfies the *Middlesex* conditions, *Younger* abstention applies, and that leads to two possible dispositions: dismissal or a stay. If the claims in such a federal suit are only for injunctive or declaratory relief, then despite a "virtually unflagging obligation" to hear and decide cases within its limited jurisdiction, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), a federal court must dismiss the case. *See Sprint*, 571 U.S. at 72 ("*Younger* exemplifies one class of cases in which federal-court abstention is required . . . ."); *PDX*, 978 F.3d at 881 n.11; *see also Trainor v. Hernandez*, 431 U.S. 434, 446 (1977) ("The pendency of the

9

state-court action called for restraint by the federal court and for the dismissal of [the plaintiffs'] complaint . . . ."); *Younger*, 401 U.S. at 45 ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). Alternatively, if the federal lawsuit seeks only damages, then a federal court cannot dismiss the suit but may, in the exercise of its discretion, stay the case for the pendency of the state proceedings. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996); *Marran v. Marran*, 376 F.3d 143, 155 (3d Cir. 2004) (citing *Quackenbush*, 517 U.S. at 730, and *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)). Similarly, if a suit with a claim for damages also seeks injunctive or declaratory relief, a federal court has discretion not only to stay the damages claim but also to dismiss any claims for injunctive and declaratory relief outright or to stay them, potentially alongside the stayed claim for damages. *See Feige v. Sechrest*, 90 F.3d 846, 849–51 (3d Cir. 1996) (explaining that, after *Quackenbush*, the district court's decision to stay claims for both damages and injunctive relief under *Burford* abstention was "entirely appropriate" and "retains the sensitivity for concerns of federalism and comity" that underlie abstention); *cf. Chavez v. Dole Food Co.*, 836 F.3d 205, 220 (3d Cir. 2016) (en banc) (explaining, for purposes of the first-filed rule for duplicative federal suits, that "the teaching[s] of *Quackenbush*" and *Feige* suggest that a stay is more appropriate where dismissing the case and "relinquishing jurisdiction is not abstention [but] abdication" (quoting *In re One2One Commc'ns, LLC*, 805 F.3d 428, 440 (3d Cir. 2015) (Krause, J., concurring))).

Here, in dismissing Borowski's complaint, which included claims for damages, on *Younger* grounds, the District Court conducted both phases of the abstention analysis. First, in analyzing whether Borowski's appeal to the New Jersey Civil Service Commission was a type of proceeding eligible for *Younger* abstention, it determined that the action was a quasi-criminal proceeding. Second, in evaluating the three *Middlesex* conditions, the District Court concluded that

Borowski's appeal to the Commission satisfied each of those conditions.

Borowski now challenges each component of the District Court's analysis. For the reasons below, she is correct in both respects. And because Borowski sought damages, it was not permissible for the District Court to dismiss her case even if the conditions for *Younger* abstention were satisfied.

### A. Borowski's Appeal to the New Jersey Civil Service Commission Was Not a Quasi-Criminal Civil Enforcement Proceeding.

The District Court erred by concluding that Borowski's appeal to the New Jersey Civil Service Commission amounted to a quasi-criminal civil enforcement proceeding. In *Sprint*, the Supreme Court reviewed the prior instances in which it permitted *Younger* abstention for state-level, quasi-criminal civil enforcement proceedings, and from those, it identified several common characteristics of those proceedings. 571 U.S. at 79–80 (identifying as examples *Ohio Civ. Rts. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 624 (1986); *Middlesex*, 457 U.S. at 432; *Moore v. Sims*, 442 U.S. 415, 419–20 (1979); *Trainor*, 431 U.S. at 444; *Huffman*, 420 U.S. at 604). This Court then distilled those characteristics into four factors for consideration in determining whether a state-level proceeding is a quasi-criminal civil enforcement action. *See ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014). With the further refining of those factors over time, they may now be expressed as three considerations:

> (i) Whether the proceeding was initiated by a state in its sovereign capacity;
>
> (ii) Whether the proceeding sought to sanction the federal plaintiff as retribution for a violation of a legal right or duty; and

11

(iii) Whether the proceeding has another striking similarity with a criminal prosecution, such as by beginning with a preliminary investigation that culminates with the filing of formal charges or by the state's ability to sanction the federal plaintiff's conduct through a criminal prosecution.

*See Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 891 (3d Cir. 2022) (listing as three factors); *PDX*, 978 F.3d at 883–84 (same); *see also Altice*, 26 F.4th at 577–78 (recognizing in the context of the third factor that a criminal analogue is not required for *Younger* abstention).

This Court has treated the second of those considerations as essential. In a case involving a challenge in federal court to an investigative subpoena served by a state agency that the agency sought to enforce in state court, this Court reasoned or assumed that all of the considerations except the second favored characterizing the state-court action as quasi-criminal. *See TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 236–37 (3d Cir. 2022). Even still, this Court held that the state-court subpoena enforcement action was not quasi-criminal due only to the second consideration: the action was not commenced to sanction the federal plaintiff as retribution for a violation of a legal right or duty. *See id.*

This case presents an opportunity to recognize that the first consideration – initiation of the proceeding by a state in its sovereign capacity – is also a necessary condition for a quasi-criminal proceeding. To enforce its criminal laws and impose penalties, a state exercises a sovereign police power, prosecution, by commencing a proceeding that is judicial in nature. *See United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the

12

police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims."). But when a state has not, in the exercise of its police powers, commenced such an adjudicatory action, then a federal proceeding's potential interference with the state's interests in providing a forum for the exercise of its police powers does not implicate the "relevant principles of equity, comity, and federalism" to the same degree as when a state initiates such a proceeding. *Steffel*, 415 U.S. at 462; *see Trainor*, 431 U.S. at 446 ("This disruption of suits by the State in its sovereign capacity . . . leads us to the conclusion that the interests of comity and federalism on which Younger and Samuels v. Mackell[, 401 U.S. 66 (1971),] primarily rest apply in full force here."). More precisely, without a state-initiated adjudicatory proceeding, those principles that justify abstention "have little force," *Steffel*, 415 U.S. at 462 (quoting *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509 (1972)), and cannot overcome "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River*, 424 U.S. at 817; *see also Sprint*, 571 U.S. at 77 (explaining that "[p]arallel state-court proceedings do not detract from that obligation"); *cf. Ala. Pub. Serv. Comm'n. v. S. Ry. Co.*, 341 U.S. 341, 361 (1951) (Frankfurter, J., concurring in the result) ("[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it."). Accordingly, for purposes of *Younger* abstention, a proceeding that is not initiated by a state in its sovereign capacity cannot be quasi-criminal.

Applying that principle here, the appeal before the New Jersey Civil Service Commission was not initiated by Kean in any capacity, much less by New Jersey in its sovereign capacity. Quite intuitively, New Jersey's procedures do not afford Kean a right to appeal its own final administrative determination to the Commission. *See* New Jersey State Model Procedures for Internal Complaints Alleging

13

Discrimination in the Workplace ¶¶ 13–14 (JA55–56). And factually here, Borowski filed the appeal that commenced the proceedings before the Commission: she was the petitioner with the burden of proof, and Kean was the respondent. Thus, Kean could not and indeed did not initiate the appeal to the Commission, so that appeal was not a quasi-criminal civil enforcement proceeding for purposes of *Younger* abstention.

In rebuttal Kean argues that the relevant state-level proceeding does not consist merely of Borowski's appeal to the Commission but should also include Kean's internal investigation and imposition of remedial measures. Yet for those actions to merge with Borowski's appeal before the Commission such that they together comprise a unitary process for purposes of *Younger* abstention, Kean's actions must be judicial in nature, not executive or legislative in character. *See NOPSI*, 491 U.S. at 369–70 ("While we have expanded *Younger* beyond criminal proceedings, and even beyond proceedings in courts, we have never extended it to proceedings that are not 'judicial in nature.'"). And here, the actions taken by Kean internally – its investigation, its interim corrective measures (removing Borowski from class and declining her services in the future), and its final determination – each lack critical characteristics of a proceeding that is judicial in nature. None of Kean's actions occurred in the presence of an impartial judicial officer, nor were they governed by court rules, nor did they implicate burdens of proof. *See Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009) ("[P]roceedings may be judicial in nature if they are initiated by a complaint, adjudicative in nature, governed by court rules or rules of procedure, or employ legal burdens of proof."). Because Kean's prior administrative actions were not associated with a proceeding that was judicial in nature, they do not merge with Borowski's appeal to the Commission for purposes of *Younger* abstention. *See NOPSI*, 491 U.S. at 369–70. Thus, Kean's actions "in no way resemble[] the initiation procedures employed by state actors in cases where the

14

Supreme Court has applied *Younger* abstention." *ACRA Turf Club*, 748 F.3d at 140.

Kean also seeks refuge under *Gonzalez v. Waterfront Commission of N.Y. Harbor*, 755 F.3d 176 (3d Cir. 2014), but it overreads the breadth of that holding. Although *Gonzalez* involved administrative proceedings regarding an adverse employment action, those proceedings were materially different from Borowski's appeal to the New Jersey Civil Service Commission. In *Gonzalez*, the employer, the Waterfront Commission of New York Harbor, had to prevail at an administrative hearing *before* it could terminate an employee. *See id.* at 178. That process required the Waterfront Commission to serve the employee with a statement of charges and then satisfy its burden of proof at a hearing in front of an administrative law judge. *See id.* The Waterfront Commission served the charges, but before the administrative hearing, the detective sued the Waterfront Commission in federal district court. *See id.* at 178–79. In upholding the district court's dismissal of the federal case on *Younger* grounds, this Court concluded that the Waterfront Commission had, in its sovereign capacity, initiated the proceeding. *See id.* at 182, 185 ("By filing this formal Statement of Charges, the Commission – an arm of the State of New Jersey – initiated the administrative disciplinary hearing to sanction Gonzalez for his 'wrongful' conduct."). By contrast here, Kean did not initiate the appeal (of its own final determination) to the New Jersey Civil Service Commission; Borowski did. Due to that difference, *Gonzalez* does not compel the conclusion that Borowski's appeal to the Commission was a quasi-criminal civil enforcement action.

For these reasons, the appeal to the New Jersey Civil Service Commission was not a quasi-criminal civil enforcement action. Because Kean does not contend that the appeal to the Commission constitutes either of the other two types of proceedings for which *Younger* abstention is available – criminal proceedings and orders in civil proceedings

uniquely in furtherance of a state court's ability to perform its judicial functions – there is no state-level proceeding here that could form a basis for *Younger* abstention. *See Sprint*, 571 U.S. at 73.

**B. The First *Middlesex* Condition Is Unmet Here Because When Borowski Filed This Lawsuit, There Was No Ongoing State-Level Judicial Proceeding.**

Yet even if the proceeding before the New Jersey Civil Service Commission were a quasi-criminal civil enforcement action, the District Court still should not have dismissed Borowski's case. In its *Younger* analysis, the District Court determined that all of the *Middlesex* conditions were satisfied. But the first of those conditions – that the companion state-level proceeding be ongoing and judicial in nature – is not met here.

As explained above, the only state-level proceeding that was judicial in nature was Borowski's administrative appeal before the Commission. That proceeding ended with a dismissal by the Commission on grounds that it did not have jurisdiction over appeals by adjunct professors. After that dismissal, Borowski had the option of appealing to the Appellate Division of the Superior Court of New Jersey, *see* N.J. Ct. R. 2:2–3(a)(2), but she did not do so within the time to appeal – or at all, *see id.* 2:4–1(b) (allowing 45 days for such appeals). Instead, she commenced this suit in the District Court.

As an essential component of its *Younger* analysis, the District Court determined that Borowski's appeal to the Commission, although dismissed and not challenged within the time permitted, was nonetheless ongoing. That conclusion did not adequately account for the significance of the Commission's *jurisdictional* dismissal of Borowski's appeal. By renouncing its power to adjudicate the dispute, the Commission, as the tribunal designated by New Jersey for such

16

appeals, extinguished any state interest in the resolution of Borowski's grievance in a state forum, thus decimating the applicable force of the justifications for abstention – equity, comity, and federalism. *See Steffel*, 415 U.S. at 462. Nor can it be that a party to a state-level proceeding dismissed for lack of jurisdiction must appeal that ruling further through the state system to shed the dismissed proceeding of its ongoing or pending status (especially since such a party may welcome the jurisdictional dismissal's elimination of a potential obstacle to seeking redress in federal court). *Cf. Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("[Dismissal under *Younger*] naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved."). Thus, after a jurisdictional dismissal of a proceeding by the tribunal designated under state law for the resolution of the dispute and the subsequent expiration of the time to appeal that ruling, the proceeding ceases to be ongoing or pending for purposes of *Younger* abstention. *Cf. United States v. Weiss*, 52 F.4th 546, 553–54 (3d Cir. 2022) (considering appeals to be 'pending' for purposes of a tax statute during "intervening periods of indeterminacy during which an appeal or petition could be filed," though not after the time to appeal expires). Consequently, Borowski's decision not to timely appeal the Commission's dismissal did not prolong the pendency or ongoing nature of the proceeding before the Commission – it was over when she filed this suit.[2]

---

[2] Other federalism doctrines, such as full faith and credit principles and *Rooker-Feldman*, govern how federal courts treat final or effectively final state-court judgments. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) ("This Court has held that [28 U.S.C.] § 1738 requires that state-court judgments be given both issue and claim preclusive effect in subsequent actions under 42 U.S.C. § 1983." (citing *Allen v. McCurry*, 449 U.S. 90, 105 (1980) (issue preclusion) and *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984) (claim preclusion)); *Exxon Mobil Corp. v. Saudi Basic*

Kean argues that this Circuit's prior decision in *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994), forecloses that conclusion. But *O'Neill* is distinguishable and does not have that effect. It involved a challenge to an ordinance enacted by the City of Philadelphia that shifted the resolution of parking tickets away from state court and into an administrative-review process. *See id.* at 787. Under those circumstances, this Court held that a final-but-unappealed ruling in the administrative proceeding that imposed liability for the parking tickets remained ongoing or pending for purposes of *Younger* abstention. *See id.* at 790–91. Critically, however, the unchallenged administrative order exercised the authority conferred on the administrative tribunal to impose liability for parking tickets; it was not a dismissal on jurisdictional grounds. *See id.* at 788. Thus, in *O'Neill* there was no disavowal of the state's interests in resolving the dispute in a state forum before the federal suit was filed. *Cf. id.* at 792 ("[T]he City of Philadelphia has a vital and critical interest in the functioning of [this] regulatory system, . . . which is intimately associated with the physical and financial workings of the city in general . . . ."). Yet when Borowski initiated this suit, the Commission had previously declined jurisdiction over her appeal, and that ruling, which Borowski did not appeal in the allotted time, is no longer ongoing or pending.[3]

---

*Indus. Corp.*, 544 U.S. 280, 292 (2005); *Malhan*, 938 F.3d at 459; *see also Ellis v. Dyson*, 421 U.S. 426, 439–40 (1975) (Powell, J., dissenting) (characterizing a federal suit attacking completed state criminal proceedings as implicating *res judicata*, not *Younger* abstention).

[3] *O'Neill* can be distinguished on two other grounds as well. The holding in that case was conditioned on several facts, including the presence of "a coercive administrative proceeding . . . initiated by the State in a state forum." 32 F.3d at 791. Those two factual predicates are absent here: Borowski, not Kean, initiated the appeal to the Commission;

Even if it were not distinguishable, *O'Neill* does not control here because it has been abrogated, at least in part. In *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), the Supreme Court held that when a federal suit seeks non-discretionary relief at law, such as damages, abstention doctrines generally allow only a stay of the federal suit, not its dismissal. *See id.* at 721 ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions."); *Merritts v. Richards*, 62 F.4th 764, 773–74 (3d Cir. 2023). But in *O'Neill*, one of the plaintiffs did seek damages under 42 U.S.C. § 1983, and this Circuit dismissed the case instead of staying it. *O'Neill*, 32 F.3d at 789, 793. Because dismissal of a damages claim on abstention grounds is no longer permissible, that part of *O'Neill* does not survive *Quackenbush*. Thus, not only is the first *Middlesex* condition – an ongoing state proceeding that is judicial in nature – unsatisfied here, but also even if all of the *Middlesex* conditions were, the District Court could not, after *Quackenbush*, dismiss Borowski's claims for damages on *Younger* grounds.

### III. CONCLUSION

For the foregoing reasons, we will vacate the District Court's judgment and remand for further proceedings.

---

and Kean could take only remedial, not coercive, measures, *see* New Jersey State Model Procedures for Internal Complaints Alleging Discrimination in the Workplace ¶ 11 (JA54–55) (allowing for "appropriate corrective measures necessary to immediately *remedy* the violation" (emphasis added)). *But cf. Sprint*, 571 U.S. at 80 n.6 (discouraging reliance on the dichotomy between coercive and remedial proceedings).